## COMMONWEALTH *vs.* DONALD BROWN.

No. 91-P-945.

Suffolk. March 11, 1992. - June 11, 1992.

Present: WARNER, C J., DREBEN, & GREENBERG, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Arrest, Consent, Motel room. *Controlled Substances.*

A consented-to entry of a motel room by police officers who possessed a valid warrant for the arrest of the registered occupant of the room was proper, and the officers' seizure of items of contraband therein was lawful under the plain view doctrine, or as incidental to the arrest of the persons present in the room. [651-653]

In the prosecution of a defendant charged with trafficking in cocaine, the evidence at trial justified submission of the case to the jury, and the evidence heard by the grand jury was sufficient to warrant indictment. [653]

INDICTMENT found and returned in the Superior Court Department on April 14, 1989.

A pretrial motion to suppress evidence was heard by *Robert H. Bohn, Jr.,* J., and the case was tried before *Robert Malcolm Graham,* J.

The case·was submitted on briefs.

*Jonathan Brant* for the defendant.

*Newman Flanagan,* District Attorney, *& Nijole Makaitis,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Three unregistered occupants of a motel room, including the defendant, were jointly tried and convicted by a jury of trafficking in cocaine (G. L. c. 94C, § 32E).[1] We conclude that a motion to suppress incriminating evidence found during a police entry into the room was rightly denied. There are several lesser points on appeal.

---

[1]The defendant, alone, has brought this appeal.

A review of the guest registration cards by special security officer Bruce Tate, who was employed by a Susse Chalet motel in Boston, revealed that a Kenneth Blakely had booked room no. 225 for February 22, 1989. The registrant's name had a familiar ring to it, and caused Tate to review a book which catalogued outstanding Boston police arrest warrants. He found there was one listed for Blakely's arrest on an armed robbery charge, with the same home address as appeared on the motel registration card. A call to the "warrant bureau" of the Boston police department triggered a chain of events which ultimately led to the defendant's arrest.

The events, as found by the motion judge, are as follows. Two plainclothes Boston police officers, Chapman and Cardona, were at the motel attending to an unrelated matter. They conferred with Tate and called for backup assistance. When two other uniformed officers arrived, all five headed towards room no. 225.[2] It was 2:45 A.M. Tate knocked on the door, which was opened by one of three occupants. Officer Cardona asked if Kenneth Blakely was there and whether the officers might enter. The person who stood at the half-opened door replied that Blakely was not there, then stepped back and said, "Sure come on in." He gestured with a sweeping motion of his hand and arm as if to punctuate his invitation. The officers walked into the room. They saw the defendant sitting on the edge of a bed next to a ball of aluminum foil with some plastic protruding from its surface. The defendant blurted out that Blakely was not there — he had gone to New York and had rented the room for their use. None of the occupants produced identification upon the officers' request. During the colloquy Officer Cardona stood near a desk and noticed its drawer was slightly open. As Officer Cardona spoke to another occupant seated at the desk, he glanced inside and saw what he believed were two par-

---

[2]Since the defendant did not raise the question whether the presence of so many officers on the scene affected the voluntary nature of his consent to their entry (see Commonwealth v. Harmond, 376 Mass. 557, 561 [1978]), we need not deal with this question in our discussion of the defendant's consent to search, infra.

tially smoked marihuana roaches in an ashtray. Officer Cardona opened the drawer further and removed the ashtray. As he did so, he saw in the rear of the drawer a small quantity of a white granulated substance lying on a piece of newspaper.

The aluminum foil ball was then opened in the presence of all three occupants. Inside was a similar white powdery substance which the officers believed was cocaine.[3] The three occupants were arrested and charged with cocaine trafficking.

1. *The Suppression Motion.*

The judge ruled that the defendant, as an invitee of a registered guest, had standing to challenge the entry into the room and the seizure of the items within. The Commonwealth rightly does not contest that ruling because a motel room is an area protected by the Fourth Amendment to the Federal Constitution. See *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. 290, 292 n.5 (1987); Smith, Criminal Practice and Procedure § 159 n.5 (2d ed. 1983). "When a defendant is charged with a crime in which possession of the seized evidence at the time of the contested search is an essential element of guilt, the defendant shall be deemed to have standing to contest the legality of the search and seizure of that evidence." *Commonwealth* v. *Amendola*, 406 Mass. 592, 601 (1990).

The judge next ruled that the officers were justified in entering the room to determine whether Blakely was there. That the officers were in the process of executing a valid warrant for his arrest permitted their initial entry. Compare *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 592 (1990) ("Law enforcement officers, acting under an arrest warrant, do not do violence to the safeguards of the Fourth Amendment to the United States Constitution if they enter the dwelling in which the suspect named in the arrest warrant lives when they have reason to think the suspect is there"

---

[3]Later analysis of the substance found inside both the ball and the drawer proved that they were correct. The substance found by Officer Cardona in the ashtray which he believed to be marihuana later was determined through chemical analysis not to be a controlled substance.

[footnote omitted]). Moreover, the occupants consented to the entry. See *Commonwealth* v. *Maloney*, 399 Mass. 785, 787-788 (1987) (Police officers searching for the defendant after he was seen running from the scene of a fire lawfully entered the home of his sister, with her *permission* and that of her boyfriend, who appeared to be a lawful occupant of the premises, to arrest the defendant). Police do exceed the limits of their authority in this area when, as the defendant argues here, the consenting parties' actions were ambiguous. See generally 3 LaFave, Search and Seizure § 8.2(g), at 205-206 & n.163 (2d ed. 1987).

The isolated fact that a person does not object to an entry does not establish consent. See *Bumper* v. *North Carolina*, 391 U.S. 543, 549 (1968) (mere "acquiescence to a claim of lawful authority" is not sufficient to establish voluntary consent). But here the judge specifically found that the person who responded to the officers' inquiry issued a clear invitation to enter; and that finding is supported by the record. See *Commonwealth* v. *Appleby*, 358 Mass. 407 (1970) (valid consent by a person in joint control).

Alternatively, the defendant contends that even if one of the occupants ushered the officers into the room, this did not amount to a grant of permission to search the entire premises. The defendant posits that the invitation to the officers was a limited one — to determine whether Blakely was present. He contends that his constitutional rights were violated when the officers failed to retreat from the room after they determined that Blakely was not to be found.

It is a settled principle that the proper scope of a consensual search is no greater than the consent given. See, e.g., *United States* v. *McBean*, 861 F.2d 1570, 1573 (11th Cir. 1988) ("The scope of a consent search is defined by the scope of actual consent in the same way that the scope of a search based upon a search warrant is defined by the warrant"). Cf. *Commonwealth* v. *Walker*, 371 Mass. 548, cert. denied, 429 U.S. 943 (1976); *Commonwealth* v. *Lee*, 383 Mass. 507 (1981). It is not necessary for us to decide what significance to give to the fact that the invitation to enter was limited.

The suspected contraband items were in plain view. Contrast *Commonwealth* v. *Silva*, 366 Mass. 402, 409-410 (1974). As to the seizure of the contents of the aluminum foil ball, which then followed, the motion judge correctly determined that the seizure was incidental to the arrests. *Commonwealth* v. *Mayer*, 349 Mass. 253 (1965). Contrast *Commonwealth* v. *Sullo*, 26 Mass. App. Ct. 766 (1989).

2. *Miscellaneous Claims.*

A defense motion for a required finding of not guilty was denied. The defendant argues that his mere presence in the room where the drugs were found was insufficient, by itself, to establish the requisite knowledge and control over the drugs to warrant submission of the case to the jury. For the usual reasons we will not disturb the trial judge's determination to submit the defendant's case to the jury, as it more than satisfied the standard set forth in *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The defendant's situation here is reminiscent of other factual scenarios which we have concluded justified submission of the case to the jury. See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613 (1990), *S.C.*, 410 Mass. 1005 (1991); *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 216-219 (1991). Contrast *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 437-439 (1991).

Lastly, the defendant claims that, for the identical reasons, the grand jury lacked a sufficient quantum of evidence to warrant his indictment. *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982). Since the grand jury heard evidence similar to that recounted above, the motion was properly denied.

*Judgment affirmed.*