COMMONWEALTH vs. EDUARDO FRANCO.

Suffolk. December 5, 1994. - March 8, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Interlocutory appeal. *Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause. *Arrest. Probable Cause.*

In the circumstances of the execution of an arrest warrant, police officers had probable cause to arrest the defendant, who was present on the premises where the police sought the subject of the warrant, and to seize money from his person incident to his arrest. [639-640]

In the circumstances of the attempted execution of an arrest warrant on premises in which police had reason to believe the subject would be found, where the officers discovered a quantity of a substance believed to be used for narcotics reprocessing, they were entitled to remain on the premises while conducting field tests on the substance [640-641]; further, the officers lawfully seized a gun and narcotics that were in plain view while they were on the premises [641-642].

Where a criminal defendant had voluntarily consented to a warrantless search of certain premises, the search and subsequent seizure of items was lawful. [642]

INDICTMENTS found and returned in the Superior Court Department on August 27, 1992.

A pretrial motion to suppress evidence was heard by *Guy Volterra,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him.

*Ronald Ian Segal* for the defendant.

*Scott H. Kremer,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A single justice of the Supreme Judicial Court for Suffolk County granted the defendant's application for leave to prosecute an interlocutory appeal from the denial of his motion to suppress and reserved and reported the case to the full court. Although it is a close question, we now affirm the ruling of the Superior Court judge.

1. *Procedural background.* On August 27, 1992, a Suffolk County grand jury indicted the defendant on the following charges: (1) unlawful possession of a firearm in violation of G. L. c. 269, § 10 (*a*) (1992 ed.); (2) trafficking in cocaine by possessing 200 grams of cocaine, or more, with the intent to distribute in violation of G. L. c. 94C, § 32E (*b*) (4) (1992 ed.); (3) receiving stolen property in violation of G. L. c. 266, § 60 (1992 ed.); and (4) unlawful possession of ammunition in violation of G. L. c. 269, § 10 (*h*) (1992 ed.). On November 4, 1992, after pleading not guilty to all of the charges, the defendant moved to suppress evidence. On May 17, 1993, the defendant's motion to suppress was denied. On July 23, 1993, the defendant filed a motion for reconsideration, which was denied on August 10, 1993. On October 20, 1993, the defendant applied to the single justice of this court for leave to take an interlocutory appeal from the denial of his motion to suppress. No notice of appeal has been filed in the. Superior Court. The Commonwealth contends that the defendant's appeal should be denied without review of the merits because the defendant's appeal is procedurally defective. Although the defendant properly applied for interlocutory relief pursuant to Mass. R. Crim. P. 15 (b) (3), 378 Mass. 884 (1979), the Commonwealth contends that the defendant failed to comply with the requirements set forth in Mass. R. A. P. 3 (a), as amended, 378 Mass. 927 (1979), and Mass. R. A. P. 4 (b), as amended, 378 Mass. 928 (1979), because the defendant failed to file a notice of appeal within thirty days of the motion judge's final order. *Commonwealth* v. *Guaba*, 417 Mass. 746, 751 (1994). Although the defendant's appeal is procedurally defective, we nevertheless review the merits of his contentions in order to conserve judicial resources.

2. *Statement of the facts.* On December 11, 1991, at approximately 5 A.M., Deputy John J. Smith, Deputy Jeffrey Cristo, and Inspector William Deegan, all of the United States marshal's office, went to 249 Lantern Road, apartment no. 26, in Revere, to execute an arrest warrant for an individual named "Orlando Melendez."[1] As Smith and Cristo approached the apartment's front door, Deegan placed a telephone call to the apartment. After Deegan informed them that a Spanish-speaking male had answered the telephone, Smith and Cristo knocked on the apartment's front door and announced, "Police." Deegan then noticed someone attempting to leave the apartment from the back patio. After Deegan told the individual to go back inside, he informed Smith and Cristo of what he had observed. Smith and Cristo then continued to knock on the front door for approximately two more minutes before the defendant finally opened the door. When Smith and Cristo asked the defendant whether he was Melendez, the defendant said, "No," and that Melendez was not present inside the apartment. Smith and Cristo then told the defendant that they had an arrest warrant for Melendez, and that they were going to search the apartment for Melendez. The defendant replied, "OK." On entering the premises, Smith and Cristo smelled a strong chemical odor emanating from a white, pasty substance which nearly filled the kitchen sink. Based on his experience in investigating narcotics offenses, Smith believed the substance to be one which is frequently used in connection with narcotics trafficking. Smith and Cristo then pat-frisked the defendant, placed him in handcuffs, and searched the apartment for Melendez. Once Smith and Cristo determined that only the defendant was present within the apartment, they called Deegan into the apartment. Deegan then searched the defendant, seizing $2,400 from the defendant's pants. Smith then removed the defendant's handcuffs, and read him his

---

[1]The arrest warrant was issued for Orlando Melendez as a result of his failure to appear in Federal court in Rhode Island on narcotics and firearms violations. The officers had reason to believe that Melendez was at that address.

Miranda rights. The defendant indicated that he understood his rights. At that time, the odor from the sink had become increasingly strong, so Smith and Cristo opened the windows and a door to increase the ventilation within the apartment. At that time the defendant was seated at the dining room table.

Deegan then called both the Drug Enforcement Agency (DEA) and the Revere police drug unit to come to the apartment for the purpose of conducting field tests on the white substance in the sink. After approximately ten minutes, Detectives Carl Borgioli and Mike Cotello, members of the Revere police drug unit, arrived. When Borgioli, a ten-year veteran of the Revere drug unit as well as a policeman of seventeen years, entered the apartment, he immediately detected a strong odor of acetone, a substance known to be used to enhance or reprocess cocaine. Borgioli then conducted a field test on the substance in the sink, which produced inconclusive results. Four DEA agents subsequently arrived at the apartment and conducted another field test which also rendered inconclusive results.[2] After noticing that the defendant's eyes were turning red, apparently from the strong odors, Borgioli moved the defendant from the dining room table to a couch in another room located closer to an open door.

When the defendant sat down on the couch, he made an abrupt turn to the left. Borgioli then turned to see what the defendant was looking at and noticed the barrel of a gun protruding from under a shelf. When Borgioli subsequently lifted up the shelf to seize the gun, he discovered some marihuana and two plastic bags of white powder, which it was later determined contained over 200 grams of cocaine. One of the DEA agents present again read the defendant his Miranda rights and asked the defendant for permission to search the apartment. After the defendant signed a consent form authorizing a search of the premises, a search was per-

---

[2]It was subsequently determined that the white pasty substance in the sink did not contain any narcotics.

formed that yielded a scale, gallon jugs of acetone and boric acid, and a respirator mask.

The defendant has conceded that both the officers' entrance into the apartment and subsequent sweep search for Melendez were lawful. See *Payton* v. *New York*, 445 U.S. 573, 603 (1979) (implicit in arrest warrant is authority to enter dwelling to search for subject of warrant if there is reason to believe subject is inside); *Commonwealth* v. *Pietrass*, 392 Mass. 892, 897 (1984) (arrest warrant allows police to enter dwelling). However, the defendant contends that the officers did not have probable cause to arrest him, and thus it was improper for the officers to seize his money during this unlawful arrest. We have stated: "Probable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). Although officers cannot act on a mere suspicion of criminal activity, there is no requirement that there be proof beyond a reasonable doubt that a crime has been committed before officers reach the requisite level of proof necessary to make a lawful arrest. *Id.* Moreover, an objective test is used to determine whether probable cause exists. *Commonwealth* v. *Hason*, 387 Mass. 169, 175 (1982). Based on the facts and circumstances known to the officers at the time of the defendant's arrest, we conclude that they had probable cause lawfully to arrest the defendant. When the officers approached the front door of the apartment, they knew that at least one person was inside the premises. However, when they knocked on the front door and identified themselves as police, the defendant did not respond to the officer's continuous knocking for over two minutes. The officers also were aware that a person had attempted to leave the premises through the rear of the apartment. Moreover, as soon as the officers lawfully entered the apartment, they immediately detected a strong chemical odor emanating from

the kitchen sink. Therefore, even though they did not know the chemical makeup of the substance in the sink, all of the other facts and circumstances known to the officers from the time that they went to the apartment to execute the arrest warrant, until the time that they discovered the white substance in the kitchen sink, was enough to warrant the belief that the defendant was engaged in the processing of narcotics. See *Commonwealth* v. *Laureano*, 411 Mass. 708, 710 (1992) (officers had probable cause to arrest defendant standing next to urinal in which the officers saw a bag of white powder). See also *Commonwealth* v. *Dias*, 405 Mass. 131, 139 (1989) (police lawfully arrested defendant after entering premises pursuant to arrest warrant for another person); *Commonwealth* v. *Snow*, 363 Mass. 778, 788 (1973) (officers had probable cause lawfully to arrest defendants without warrant). Therefore, given his lawful arrest, we conclude that it was proper for the officers to seize the defendant's money.

The defendant next contends that the officers only were authorized to stay on the premises long enough to ascertain whether the subject of their arrest warrant was present. We disagree. When police officers lawfully enter a residence to execute an arrest warrant and observe suspected items of contraband in plain view, they are not required immediately to leave the premises once they have determined whether the subject of the arrest warrant is present. *Commonwealth* v. *Brown*, 32 Mass. App. Ct. 649, 652-653 (1992). In *Brown*, police officers entered a motel room to execute an arrest warrant for the registered guest. *Id.* at 650. When the officers entered the motel room, three persons were present; however, the officers determined that the subject of the arrest warrant was not present. While inside the room, the officers observed and seized suspected contraband inside a partially open bureau drawer. When the defendant claimed that his rights had been violated because the officers remained in the room after they had determined that the subject of the warrant was not present, the Appeals Court stated that the defendant's rights

had not been violated because the officers were lawfully present and the suspected contraband was in plain view.

Here the officers lawfully entered the premises with an arrest warrant, and while searching for the subject of that warrant, observed a substance, in plain view, believed to be used for narcotics reprocessing. Once the officers discovered the suspect substance in the kitchen sink, they were entitled to seize the substance and conduct a field test to determine its chemical properties. *Commonwealth* v. *Varney*, 391 Mass. 34, 38-39 (1984) (no warrant required to conduct field test on lawfully obtained substance believed to be narcotic because no legitimate expectation of privacy in chemical composition of substance lawfully obtained by police). Therefore, it was proper for the officers to call the Revere drug unit and the DEA to come to the premises to conduct field tests on the white substance in the sink and remain on the premises while those tests were being performed.

The defendant's next contention is that the firearm, the cocaine, and the marihuana were unlawfully seized because the officers were not lawfully present when those items were seized. We have stated that officers, lawfully on the premises, may seize items which they observe in plain view.[3] See *Commonwealth* v. *Pietrass*, 392 Mass. 892, 901 & n.12 (1984); *Commonwealth* v. *Hason*, 387 Mass. 169, 176-177 (1982); *Commonwealth* v. *Accaputo*, 380 Mass. 435, 447-448 (1980). Moreover, this court has held that it is proper for a police officer to escort a defendant into other areas of his residence and seize items found in plain view as long as the defendant was moved for a proper purpose, and not as a pretext to search those other areas. *Commonwealth* v. *Lee*, 383

---

[3]This court has adopted a three-prong test to determine whether a seizure of a suspected item of contraband seen in plain view is justified. *Commonwealth* v. *Accaputo*, 380 Mass. 435, 447-448 (1980) (discussing three prongs including lawful presence of officers, inadvertent discovery of item, and item's apparent nexus to criminal activity). The defendant has not raised any questions with regard to the "inadvertence" or "nexus to criminal activity" prongs of the plain view test. Therefore, we conclude that any claims with respect to those issues have been waived. *Commonwealth* v. *Johnson*, 374 Mass. 453, 458 (1978).

Mass. 507, 509-510 (1981) (plain view seizure of weapon and ammunition proper where officer escorted defendant to bedroom so that defendant could dress himself). Here, the officer moved the defendant from the dining room table to a room with increased ventilation because the defendant appeared to be suffering from an adverse reaction to the odor from the material in the kitchen sink. Once inside that room, the officer made a plain view observation of the gun barrel protruding from underneath the shelf. When the officer lifted the shelf to seize the gun, he then discovered the marihuana and the cocaine. *Commonwealth* v. *Ford*, 394 Mass. 421, 424 & n.1 (1985) (seizure of additional evidence proper when officer's actions of securing items in plain view lead to discovery of other evidence). Therefore, because the defendant was moved for a proper purpose, the officer was lawfully present where the items seized were in plain view.

Lastly, the defendant contends that the subsequent search of the apartment was unlawful, and therefore, the items seized during that unlawful search should be suppressed as fruits of an illegal search. As we have stated earlier, the officers were lawfully present on the premises. Furthermore, the motion judge found that the defendant voluntarily consented to that subsequent search and gave his written authorization for the search.[4] The fact that the defendant consented to the search while under arrest does not preclude a finding that the consent was voluntarily given. *Commonwealth* v. *Aguiar*, 370 Mass. 490, 497 (1976). Therefore, because the defendant consented to the warrantless search of the apartment, the search and subsequent seizure of additional items was proper.

---

[4]The motion judge stated: "There is no evidence that the defendant's consent was procured by coercion or duress. Thus, I find the defendant's consent to the search of the apartment was freely and voluntarily given." Given that the motion judge's findings are supported by the record, we will only review "the judge's 'application of constitutional principles to the facts as found.'" *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990), quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986). We conclude that there was no error.

For all of the foregoing reasons, we conclude that the defendant's motion to suppress was properly denied, and therefore, we remand the defendant's case for a trial on the merits.

*So ordered.*