Beatrice S. Burstein, J.
My review of the facts and the governing decisional precedents persuade me that the motion to suppress the evidence must be granted.
As a Judge and a parent, I am sensitive to the need for adequate, but reasonable, surveillance of students by school authorities. I am not certain, however, that our educators understand either the causes for, or the character of, the current revolt by students against what have been, perhaps uncritically, accepted as socially useful institutions. Undoubtedly, the thrust and objectives of the rebellion are ill-defined. Neither the theoreticians of the so-called new left nor their adherents are able to describe'the scope and the ambit of their anti-institutional attack. (Blazer, “ The New Left and Its Limits ”, July, 1968, p. 31 et seq. Commentary). The notion of participatory democracy may be inviting and challenging but it is not advanced by smoking marijuana in dormitories or shooting heroin in obscure corners of the campus. This kind of irresponsibility not only arrests progress but threatens the whole structure of a democratic society. Antisocial behavior which pretends to strike a blow for independence is a matter of the most immediate concern for all citizens. This kind of conduct must be resisted; but the attack must be on a constitutional battleground.
The price of a modern education is not the waiver or surrender of constitutional privileges. One does not salvage a democratic society by adopting undemocratic techniques. The Bill of Bights is not a sometime thing; the Founding Fathers spoke not in relative, but in absolute, terms. An unlawful search and seizure is unlawful; it cannot be partially lawful and partially unlawful. The slightest intrusion on the rights of one citizen endangers the security of all citizens.
We cannot escape our responsibilities by resorting to the coercive weapons of a police State. We cannot stamp out drug addiction, marijuana smoking, glue sniffing and assorted illegal practices at a campus by breaking into dormitories. Abandonment of constitutional protections and reliance upon illegal methods can lead only to the destruction of democratic processes.
The case at bar suggests the whole complex of problems which have emerged on American college campuses. No Judge approaches the issues posed by this case without an awareness of the significant implications of a decision. But we are not free agents. This court does not mark out the boundaries of *368 constitutionally permissible conduct. We follow the mandate of the higher courts of our State and of the United States Supreme Court and we test the facts by reference to the fundamental principles of law they have enunciated. These teach us that the search here was unlawful.
The relevant facts are that Hofstra University authorities were apprehensive about the use of marijuana in the dormitories. Accordingly, they arranged with the police authorities for a survey of the dormitory premises. Accompanied by two university officials, the police entered the dormitory room of one of the defendants without announcing their purpose and without a search warrant. There was no evidence that anyone, including the defendants, was in the room at the time of the entry, since neither the police nor the university officials observed the defendants entering the room.
What motivated the police and the school authorities was the odor in the hallway leading to the room and information previously provided by an unidentified informant about one of the defendants. Once inside, the incriminating evidence was observed and seized.
The court expresses no opinion as to whether any of the boys who were present in the room were and had been smoking marijuana. The record is entirely silent on that point. One thing, however, is clear: at the time they entered the room, there was no immediate danger that the evidence, if any, would be removed and destroyed, nor was there a lack of time within which to obtain a search warrant.
It is palpable that the mainspring of the police action was a suspicion that a crime was being or had been committed. Suspicion, however, is not an alternative to, or a substitute for, probable cause that a crime was or is being committed.
In the circumstances of a case such as this, an entry and search is lawful only if there was consent or if the search was an incident to a lawful arrest. No claim is made that there was express consent to the entry.
Can consent be implied? It has been argued that a student impliedly consents to entry into his room by university officials at any time, except at late hours. This contention is not supportable even though there may be circumstances under which entry is permissible; but these circumstances are not present here nor does the court intend to catalogue the occasions which might permit entry into the room of a college student.
The police and the Hofstra University officials admitted that they entered the room in order to make an arrest, if an arrest was warranted. This was, in essence, a fishing expedition calcu *369 lated to discover narcotics. It offends reason and logic to suppose that a student will consent to an entry into his room designed to establish grounds upon which to arrest him. Certainly, there can be no rational claim that a student will self-consciously waive his constitutional right to a lawful search and seizure. Finally, even if the doctrine of implied consent were imported into this case, the consent is given, not to police officials, but to the University and the latter cannot fragmentize, share or delegate it.
Was the search an incident to a lawful arrest? Obviously, no. The police had no grounds for a lawful arrest when they entered the room. Indeed, it was admitted that if the evidence had not been found when they entered the room, no arrest could have been made. Simply stated, the arrest was dependent upon finding the fruits of the'unlawful search.
The practice of some students (and the number is far less than is generally believed) who use narcotics and who take trips to the outer world instead of to the library, is appalling enough. But this egregious stupidity and callous irresponsibility should not be matched by the wanton invasion of constitutional liberties. One need not indulge in an academic debate about the harmfulness or supposed benefits of marijuana and other similar drugs, (Sterba, “ Politics of Pot ”, Esquire, Aug., 1968, p. 58 et seq.), to he shocked and disturbed about the use of these drugs by college and high school students. And the court does not denigrate from the contributions made by the police and the enormous burdens imposed upon them in the detection and prevention of crime in these disoriented times. We must recognize, at the same time, that there are limits to the use of the police power and that crime detection must comply and conform with permissible constitutional sanctions. A frightened and impotent community cannot ask the police to perform illegal acts because the task of coping with young people is beyond either their willingness or ability to realistically handle it.
The fact is that the police action here offended the constitutional rights of the defendants. This conclusion does not rest upon the fact that there was adequate time to secure a search warrant. (Trupiano v. United States, 334 U. S. 699; United States v. Rabinowitz, 339 U. S. 56.) The principal inquiry is not whether there was adequate time to obtain a search warrant but whether the search itself was reasonable or unreasonable (Taylor v. United States, 286 U. S. 1). In Chapman v. United States (365 U. S. 610), the police, ydth the consent of the defendant’s landlord, entered defendant’s apartment where they conducted a search without a warrant. It was there held that *370 the search was unlawful because it was not an incident to an arrest.
In Johnson v. United States (333 U. 43. 10), the police entered defendant’s living quarters and conducted a search without a warrant after having detected a smell of burning opium. The search was held to be constitutionally impermissible. Mere suspicion that a crime is being committed is not sufficient to support a search (People v. Abramson, 40 Misc 2d 723). Indeed, consent to enter a room standing alone, is not a sufficient defense to a claim of constitutional privilege if the consent was obtained as a result of the defendant’s submission to, and fear of coercive action by, the authorities. Absent probable cause for the belief that there was a crime being committed, a search cannot be sustained. (People v. Lund, 50 Misc 2d 589.) This is not a case where a search is permitted by school authorities in order to maintain discipline over young students. (People v. Overton, 20 N Y 2d 360.)
In a recent, well-reasoned opinion by the 'Chief Judge Kenison of the New Hampshire Supreme Court (State v. Bradbury, 243 A. 2d 302), a warrant had been issued to search a college woman’s dormitory room for marijuana. At the time of the entry into the woman’s dormitory room, a man was present and the police proceeded to search him. The precise question involved was whether ‘ ‘ a valid search warrant to search designated premises authorizes the search of any individual who happens to be in the premises ”. This search was justified by the People on the grounds that the officers were entitled to “ frisk ” the defendant for dangerous weapons. The claim was rejected as being fanciful.
Belying upon dictum in United States v. Di Re (332 U. S. 581), and a decision by the Idaho courts (Purkey v. Maby, 33 Idaho 281), the court held (p. 303) that a warrant to search a certain place ‘ ‘ can not be extended so as to constitute authority for the officer to whom it was issued to search a person, not connected in any way with the place being searched, who merely happens to be upon the premises and who is not mentioned or described in the affidavit of probable cause upon which the warrant was issued ’ ’.
The final argument which was advanced by the People was that in the circumstances of that case' ‘ ‘ there was probable cause to arrest the defendant for possession of marijuana and to search him incident to the arrest ”. The court rejected this argument holding that there was no basis in the facts as adduced at trial ‘ ‘ for a finding of probable cause to arrest the defendant in advance of a search of his person ”.
*371 The principle is perfectly clear: a search cannot be justified on the basis that it uncovered facts which gave rise to probable cause for arresting a person and then by a process of induction, to suggest that the search is justified because it is an incident to an arrest.
Recently, the New York Court of Appeals in People v. Corrado (22 N Y 2d 308) set forth the tests of probable cause. In that case, two detectives and two officers in the early evening hours of January 26,1966, acting, on a tip received from an undercover member of the Police Department that a pound of marijuana would be passed on a corner in Brooklyn, sat in a car to observe the scene. At approximately 9:30 p.m. a car pulled up and parked across the street from the officers. Inside the car were three teenagers whom the officers did not know. Corrado was inJhe driver’s seat. One Catalan, who accompanied Corrado, left the car and walked down the street to another car. He then remained in the second car .for a few seconds and returned to Horrado’s car when he was observed handing four envelopes to Corrado. Catalan again left the car and walked toward Quentin Road in Brooklyn. Corrado was then observed handing the envelopes to one Mossey who bent down and moved his hands toward the floor. 'Corrado started the car, and, upon hearing this, one of the detectives blocked Corrado’s car. Another detective approached Corrado while the first detective, (Detective Stoehr), opened the rear door of the car, entered and seized the four envelopes. These were sealed. Detective Stoehr opened them and found what appeared to be marijuana. The envelopes were confiscated and the defendants were arrested.
The case presented a single question, namely, whether there was probable cause to arrest (Code Crim. Pro., § 177). The People conceded that the fruits of the search could not be used to support a claim of probable cause, but contended there was sufficient evidence, independent of the search, to sustain the arrest.
The Court of Appeals distinguished the case at bar from People v. Valentine (17 N Y 2d 128) and People v. White (16 N Y 2d 270). Relying, instead, on the decision by the United States Supreme Court in Henry v. United States (361 U. S. 98), the court held that probable cause did not exist. The People argued that probable cause was established by the uncontradicted testimony of Detective Stoehr that he had never seen loose marijuana in small quantities passed or sold in envelopes other than the type which was involved in this case. The detective’s knowledge justified him in drawing an inference that the defendants “ probably had contraband in their posses *372 sion The court responded (p. 313): “ The argument is defective because the envelopes could have contained any number of contraband items * * * We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause”.
In a significant footnote, the court discussed the contention that the tip provided the basis for the arrest. It was conceded, first, that hearsay evidence may be employed to establish probable cause for an arrest without a warrant (McCray v. Illinois, 386 U. S. 300; cf. Aguilar v. Texas, 378 U. S. 108) but the court then concluded (p. 313): “the record does not indicate whether the lead was based on the personal knowledge or observations of the undercover agent or on information furnished by an informant, whose reliability had been established. (Rugondorf v. United States, 376 U. S. 528; Aguilar v. Texas, supra; United States v. Ventresca, 380 U. S. 102; McCray v. Illinois, supra.) Absent such evidence, the tip is entitled to no weight in determining probable cause. (Aguilar v. Texas, supra; United States v. Warden of Attica State Prison, 381 F. 2d 209.) ”
Dispositive of the issues here is a decision by the United States Supreme Court in Sibron v. New York (392 U. S. 40). This case arose in the context of the New York’s “ Stop and Frisk Law”. (Code Crim. Pro., § 180-a.) The conviction of Sibron and one Peters, for the unlawful possession of heroin, was upheld by the Court of Appeals of New York on the ground that the evidence was properly admitted and that the searches which uncovered the evidence were authorized by the statute.
In that case, the police officer testified that while he was patrolling his beat, he observed Sibron in the vicinity of 742 Broadway and observed him in conversation with six or eight persons whom the officer knew from past experience to be narcotic addicts. The officer did not overhear any conversations and saw nothing pass between Sibron and any of the persons with whom he spoke.
Late in the evening of March 9, 1965, the officer saw Sibron speak with three known addicts inside the restaurant. Again, nothing was overheard and nothing was seen to pass between Sibron and the addicts. The officer then entered the restaurant, thrust his hand into the pocket of Sibron and discovered glassene .envelopes which turned out to contain heroin. It was conceded that the officer was not in fear of bodily harm and that he did not search Sibron in self-protection to find weapons.
The United States Supreme Court held that the heroin was inadmissible in evidence because there was no probable cause *373 to arrest iSibron for any crime at the time the officer accosted him in the restaurant, took him outside, and searched him. As the court pointed out (p. 63): “It is axiomatic that an incident search may not precede an arrest and serve as part of its justification ”.
The doctrine is now basic: unless a search is the incident of a lawful arrest and not the occasion which gives rise to the arrest, it is unlawful.
It seems self-evident that the dormitory room of a college student is not open for entry at all times for all purposes. Hence, it must be ruled that the search in this case was unlawful and the evidence must be suppressed.
University students are adults. The dorm is a home and it must be inviolate against unlawful search and seizure. To suggest that a student who lives off campus in a boarding house is protected but that one who occupies a dormitory room waives his constitutional liberties is at war with reason, logic and law.
I accordingly find that the motion to suppress the evidence should be granted.