## Commonwealth *vs.* Thomas J. Maloney.

Plymouth. February 2, 1987. — April 30, 1987.

Present: Wilkins, Liacos, Abrams, Nolan, & O'Connor, JJ.

*Arrest. Constitutional Law,* Arrest, Admissions and confessions. *Homicide. Attempt.*

Evidence at the hearing on a pretrial motion to suppress warranted the judge's determinations that certain police officers, who were searching for the defendant after he was seen running from the scene of a fire, properly entered the home of the defendant's sister, where they found the defendant asleep in the basement, and that his subsequent confession at the police station gave "no indication of any physical or psychological coercion." [786-788]

At the trial of indictments charging arson and attempted murder there was sufficient evidence, including evidence that the defendant had set fire to a dwelling house at 1:30 A.M., when all occupants were in bed, to warrant the denial of the defendant's motion for required findings of not guilty as to the charges of attempted murder, despite his denial of any intention to kill the victims. [788-789]

INDICTMENTS found and returned in the Superior Court Department on July 27, 1983.

A pretrial motion to suppress was heard by *Augustus F. Wagner, Jr.,* J., and the cases were heard by *Robert S. Prince,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Eileen D. Agnes* for the defendant.

*Ann E. Rascati,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. Following a trial without a jury in the Superior Court, the defendant was found guilty of arson and of eight counts of attempted murder (there were eight persons in the house which the defendant burned). He appealed, and we took

the case on our own motion. In this appeal, he raises two issues concerning: (1) the denial of his motion to suppress his statements to police after arrest; and (2) the denial of his motion for a required finding of not guilty as to attempted murder. There is no error.

After setting fire to its front porch, the defendant was seen running from the scene by a young inhabitant of the house. The fire occurred at approximately 1:30 A.M., on June 30, 1983, when the eight occupants were in bed. The police searched for the defendant and finally found him asleep in the basement of a home in which his sister, her children, a brother, and her friend lived. After interrogation, the defendant admitted setting the fire but protested that he did not intend to harm the occupants.

1. *Motion to suppress.* The defendant was not unknown to the police who first went to his sister's home in Marshfield in search of him at 3 A.M. The police talked to his sister who said that she had not seen the defendant and that he was not allowed in the house. Her live-in boyfriend was present during this conversation. The police returned to the sister's house at 5 A.M. and spoke with both the defendant's sister and her boyfriend. The police asked the boyfriend to check the basement. He did so and returned to tell the police that the defendant was asleep there and that he wanted him removed.

The police officers went to the basement, arrested the defendant for trespass, and gave him his Miranda warnings.[1] After he was taken to the police station, the defendant was again given Miranda warnings and an opportunity to make a telephone call. He narrated a story of unrequited love of a young woman in the house which he burned. He admitted setting the fire but wanted only to scare her and her family. He hid in the bushes after setting the fire and ultimately went to his sister's house.

---

[1] The police had a document on file, described variously as a court order and as terms of probation, directing the defendant to live with a sister in Greenfield, and informing him that he was not allowed in Marshfield without permission of the court. This document was available at the hearing on the motion to suppress but was not offered in evidence and is not part of the record.

During the interrogation, he became sick and a police officer accompanied him to a toilet where he vomited a few times. The police asked if he wished to continue the interview after leaving the toilet and he agreed to continue.

He then described in more detail his activities. He told the police that he used gasoline which he obtained from a nearby shed to ignite the porch and waited in the bushes until the police and firefighters arrived before he left the scene. He then declared that he wished to say nothing further and the interrogation, which lasted between 45 minutes and one hour, ended.

The police testified, and the judge found, that the defendant had been drinking but was not drunk, nor under the influence of liquor. He appeared to understand the questions and he was neither promised anything, nor was he threatened. The judge concluded that he "voluntarily, intelligently and knowingly waived his rights." That finding was warranted.

The defendant attacks the validity of the arrest on the ground that the boyfriend had no authority to permit the police to enter. The judge found (and there was evidence to support the finding) that at approximately 5 A.M. the police returned to the house of the defendant's sister and again spoke to her and her boyfriend. The police officer asked the boyfriend if he had seen the defendant. He responded that he had not seen him and the police asked him if he had checked the basement since the police's last visit. The boyfriend rejoined that he had not gone to the basement but that he would do so. The officers returned to the cruiser which was parked in the driveway and waited for the boyfriend, who within a short time reported that the defendant was asleep in the basement. The judge ruled that, "[a]s a result of conversation and observation, the police reasonably and correctly concluded that [the boyfriend] could authorize them [the police] to enter the premises." We see no error in this conclusion.

The entry of the police, however, was as much the fruit of the invitation of the defendant's sister who was present as it was of the boyfriend. She did not object to the entry and it may be inferred that he had her authority to permit the police to enter. Further, the boyfriend appeared to be a lawful occupant

with authority to permit the police to enter. See *United States*
v. *Matlock,* 415 U.S. 164, 171 & n.7 (1974).

Moreover, the police had reason to believe that the defendant
was trespassing in violation of G. L. c. 266, § 120, set forth
in the margin,[2] in light of the court order. See note 1, *supra.*
Section 120 permitted the police to enter the basement.

Finally, the defendant argues that he was "tricked" into the
confession. The record does not support this argument and the
judge did not so find. Rather, the judge ruled that there was
"no indication of any physical or psychological coercion."
There was no error.

2. *Motion for required finding.* The defendant argues that
he should not have been found guilty of attempted murder
because he did not intend to kill. It is true that the crime of
attempted murder, like the crime of assault with intent to mur-
der, requires proof of an intent to kill. See *Commonwealth* v.
*Henson,* 394 Mass. 584, 590-592 (1985). Despite the defend-
ant's protest that he intended only to scare, the fact finder
could infer, as he did, an intent to kill from the defendant's
conduct in setting fire to the house at 1:30 A.M., when all
occupants were in bed. See *Henson, supra* at 591. The trier
of fact is not compelled to accept the defendant's explanation.
See *Commonwealth* v. *McInerney,* 373 Mass. 136, 142 (1977)
(jury were not required to accept the defendant's explanation
in negating malice). There was sufficient evidence to satisfy
beyond a reasonable doubt a rational trier of fact of the intent

---

[2] General Laws c. 266, § 120, provides: "Whoever, without right, enters
or remains in or upon the dwelling house, buildings, boats or improved or
enclosed land, wharf or pier of another, after having been forbidden so to
do by the person who has lawful control of said premises, either directly
or by notice posted thereon . . . shall be punished by a fine of not more
than one hundred dollars or by imprisonment for not more than thirty days,
or both . . . . A person who is found committing such trespass may be
arrested by a sheriff, deputy sheriff, constable or police officer and kept in
custody in a convenient place, not more than twenty-four hours, Sunday
excepted, until a complaint can be made against him for the offence, and
he be taken upon a warrant issued upon such complaint."

to kill (as well as the other elements of the crime). *Common-wealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979).

*Judgments affirmed.*