ANTONIO A. PASQUALONE vs. JOSEPH GATELY & another.[1]

Middlesex. February 6, 1996. - April 5, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Civil Rights,* Immunity of public official. *Constitutional Law,* Search and seizure. *Search and Seizure,* Exigent circumstances, Warrant. *Public Officer. General Court.*

A police officer who, without a warrant and in circumstances that were not exigent, seized certain weapons and ammunition from a residence thereby violated the resident's rights under the Fourth Amendment to the Constitution of the United States [401-402], and in a claim brought under 42 U.S.C. § 1983, the officer was not entitled, as a public official, to qualified immunity where a reasonable police officer would have known that such conduct in the circumstances violated clearly established constitutional norms [402-404].

CIVIL ACTION commenced in the Superior Court Department on June 19, 1991.

The case was heard by *Hiller B. Zobel, J.,* on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Howard Friedman (Jo Ann Citron* with him) for the plaintiff.

*Philip B. Benjamin* for the defendants.

FRIED, J. The plaintiff, Antonio A. Pasqualone, brought this action seeking damages from the defendant, police Sergeant Joseph Gately, individually, and from his employer, the town of Framingham, because of an incident in which Gately and other Framingham police officers went to Pasqualone's residence and seized weapons and ammunition without a warrant. On cross motions for summary judgment,[2] a

[1]Town of Framingham.

[2]The plaintiff's complaint alleged violations of G. L. c. 12, § 11I (1994 ed.); G. L. c. 214, § 1B (1994 ed.); G. L. c. 258 (1994 ed.) and 42 U.S.C.

Superior Court judge denied the plaintiff's motion and granted summary judgment for the defendants. The plaintiff appealed and we transferred the case to this court on our own motion. The plaintiff has now waived all claims except the claim against Gately under 42 U.S.C. § 1983 (1988). Because Gately's conduct violated Pasqualone's rights under the Fourth Amendment to the Constitution of the United States and because Gately was not entitled to qualified immunity as matter of law, we reverse.

I

Pasqualone was employed as the house manager of the Bridge House, a State-approved, private residential facility for parolees and drug addicts located in Framingham. At about 9:10 A.M. Sunday, September 3, 1989, Gately, who was in uniform, came to the Bridge House, one of several locations designated as rooming houses which he was checking for compliance with sprinkler and other regulations. Pasqualone came to the door and then accompanied Gately on a tour of the premises. Gately later remarked that the premises were exceptionally clean and that Pasqualone received him with great courtesy. Pasqualone explained the nature of the Bridge House and stated that he was its house manager and a counselor for its residents. At the conclusion of Gately's tour, Pasqualone invited Gately to his private apartment in the house for a cup of coffee. In the apartment Gately noticed several weapons, which Pasqualone explained he was licensed to carry. Pasqualone then opened a heavy steel locker, which Pasqualone referred to as a gun safe, to show Gately other weapons, including several rifles. As Gately was leaving, Pasqualone invited him to return the following Wednesday for a church supper.

Gately arrived back at the police station at about 10:25 A.M. He examined Pasqualone's 1989 application for a license to carry firearms (which was on file at the station). The relevant portions of the application, with Pasqualone's typed-in

§ 1983 (1988). The defendants' summary judgment motion sought the dismissal of all these claims. The plaintiff's motion only sought summary judgment as to the § 1983 claim.

answers, are reproduced in the margin.[3] A pardon from the Governor of Massachusetts was attached. Gately ran a computer check which revealed that Pasqualone had been arrested and convicted in Delaware in 1984 for carrying a concealed weapon, an arrest and conviction not listed in his application. Gately concluded that Pasqualone had "lied on his application."[4]

Gately then had several telephone conversations with Michael Kozak, a parole department supervisor responsible for many of the Bridge House parolees, and with Officer James Harrington, the firearms licensing officer for Framingham. Kozak told Gately to get the weapons out of the house.[5] Harrington told Gately "the license is revoked now."

At 4 P.M., Gately, accompanied by four other officers, returned to the Bridge House. He told Pasqualone that "his right — his license to carry was revoked and we [are here] to seize the weapons and ammunition," which they proceeded to do.

Gately did not have a search warrant, and had not discussed with anyone the possibility of obtaining one. He stated in his deposition that he did not have enough time to get a warrant because his shift ended at 4 P.M. He also stated that, because the neighborhood around the Bridge House was

---

[3]"HAVE YOU EVER BEEN CONVICTED OF ANY OFFENSE AGAINST THE LAW, OR ARE YOU NOW UNDER CHARGES FOR ANY OFFENSE AGAINST THE LAW? *no* HAVE YOU EVER BEEN ARRESTED? *yes* HAVE YOU EVER BEEN CONVICTED OF THE UNLAWFUL USE, POSSESSION, OR SALE OF NARCOTIC OR HARMFUL DRUGS? *yes* HAVE YOU EVER APPEARED IN ANY COURT AS A DEFENDANT IN A CRIMINAL CASE? *yes* IF 'YES' TO ANY OF THE ABOVE, GIVE DATE(S), LIST OFFENSES AND DISPOSITION OF CHARGES: *see attached governor's pardon* . . . "REASON(S) FOR REQUESTING THE ISSUANCE OF A LICENSE TO CARRY FIREARMS: *The nature of my job is much like a parole officer in which I deal with potentially dangerous and unpredictable people. I also take large sums of money to the bank weekly and I have a daughter 14 yrs. old that lives with me, so I am concerned for my life and property.*"

[4]On June 6, 1990, Pasqualone was acquitted of knowingly providing false information on his application.

[5]Kozak told Gately the morning after Gately had visited Pasqualone that the Governor's pardon was not effective for the purposes of obtaining a license to carry firearms because it did not expressly state that Pasqualone was authorized to possess firearms. Kozak also told Gately that there should not be weapons at the Bridge House because residents there were still under the supervision of the parole board.

residential and because an elementary school and a prison were nearby, Pasqualone's guns were a danger to public safety such as created "exigent circumstances" mandating their immediate removal. Asked what these exigent circumstances were he responded:

> "If we had waited until the next working day and gone back to that house to get the ammunition and the weapons and the knives, those weapons could have been moved; and for public safety that's why we went back at that time. If we had waited a day, within the next so many hours or whatever all that property could have been moved out of the house."

When asked what led him to believe that the property would be moved out of the house, Gately responded that it was "just [his] opinion," and that he "just didn't want to take the possible chance that when we returned the next day the weapons would not be there."

## II

Perhaps if Gately had telephoned Pasqualone or even come to the Bridge House personally and explained that in the circumstances he would prefer that Pasqualone turn over the weapons at once, we might have had a different case. But here there was a demand, not a request, and one accompanied by a considerable show of authority. See *Florida* v. *Bostick*, 501 U.S. 429 (1991); *Michigan* v. *Chesternut*, 486 U.S. 567 (1988). This was a seizure and the defendants do not claim otherwise. Here is what Gately said at his deposition:

> "The persons that were in there [Bridge House] had no right to possess firearms. It was my belief it was still a rooming house. As a rooming house the police at any time can enter the dwelling. We entered that property. We advised [the plaintiff] we were there to *seize* the weapons. He turned over all the weapons, the ammunition and the knives." (Emphasis supplied.)

Because there was a seizure, it must comply with the Fourth Amendment to the United States Constitution. There was no warrant. Only exigency would justify acting in the absence of

a warrant here, and the facts of the case do not show such exigency. See *Welsh* v. *Wisconsin,* 466 U.S. 740, 749-754 (1984); *Commonwealth* v. *Huffman,* 385 Mass. 122, 124-25 (1982), quoting *Commonwealth* v. *Forde,* 367 Mass. 798, 800 (1975) ("must be a showing that it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict"). A warrant may be obtained in a matter of hours, even on a Sunday. In any event, the danger Gately stated he apprehended from the presence of such an arsenal in a residence housing parolees and drug addicts, and one located in a residential neighborhood, does not have the kind of imminence that qualifies for the exception to the warrant requirement. Gately was able to give no reason why the presence of the guns, which had presumably continued for some time, was about to erupt into an emergency, and certainly nothing about Pasqualone's demeanor suggested that he would not cooperate with authoritative requests or would seek to put the weapons beyond the reach of the authorities. *Huffman, supra* at 126.

Gately also claims qualified immunity from liability, should it be determined that he had indeed violated Pasqualone's constitutional rights. The Supreme Court of the United States has fashioned a rule of immunity for violations of constitutional rights, whether the cause of action arises under § 1983 or directly under the Federal Constitution. Public officials are only liable if they violate clearly established legal norms. See *Mitchell* v. *Forsyth,* 472 U.S. 511, 525-526 (1985); *Harlow* v. *Fitzgerald,* 457 U.S. 800, 815 (1982). Immunity does not depend on the good faith or particular beliefs of the officer as to the state of the law; rather the test is objective. More recently in *Anderson* v. *Creighton,* 483 U.S. 635, 639-640 (1987), the Supreme Court explained that the issue which is tested by the objective standard must not be put at too remote a level of abstraction. That is why the plaintiff's citation of the ringing language of *Buenrostro* v. *Collazo,* 973 F.2d 39, 43 (1st Cir. 1992), is not particularly helpful. To be sure the right to be secure against warrantless seizures in the home is "indelibly etched in jurisprudential granite," but the law recognizes exceptions — such as exigent circumstances — to that general proposition, and the application of both the proposition and the exceptions will depend on the particular circumstances of the case. As the Supreme Court stated in

*Anderson, supra* at 639, "[p]laintiffs would be able to convert
the rule of qualified immunity that our cases plainly establish
into a rule of virtually unqualified liability simply by alleging
violation of extremely abstract rights." Rather the test laid
down in *Anderson*, which itself involved a claim of exigent
circumstances, asks whether a reasonable officer would have
known that the conduct violated established constitutional
norms in the circumstances as they appeared to the defendant
officer.

The same considerations that lead us to conclude that the
circumstances were far from exigent should have led a rea-
sonable officer in Gately's position to that conclusion. Nor
does it assist his situation in the least that Kozak, the supervi-
sor of many of the parolees at the Bridge House, had told
Gately to get the weapons out of the house. The record sug-
gests that Gately had only the vaguest knowledge of the legal
requirements for the conduct of searches and seizures and
Kozak's order certainly did not add any new information
such as would supply the missing elements of exigency. A
somewhat more plausible claim for immunity might be made
on account of the license revocation. As we have indicated,
Harrington, the firearms officer, had told Gately that because
of the misstatements on the application Pasqualone's license
was revoked "now." Perhaps Gately might have believed that
because Pasqualone no longer had a valid license to possess the
weapons, and because G. L. c. 140, § 129D (1994 ed.), provides
that on revocation of such license "the person whose applica-
tion was so revoked, suspended or denied shall without delay
deliver or surrender, to the licensing authority where he
resides, all firearms . . . which he then possesses," there
sprang into being an immediate right on the part of the police
to seize them. But this contention too will not withstand
scrutiny. If Pasqualone had never had a firearms permit of
any sort, valid or invalid, only exigent circumstances would
have justified Gately's seizing the weapons without a warrant.
It is not reasonable to imagine that the revocation of the
license somehow gave the authorities a greater latitude in
imposing on Pasqualone. Nor is it significant that just this
fact pattern does not appear to have been addressed by our
cases or Federal cases before. As was said in *Anderson, supra*
at 640, "[t]he contours of the right must be sufficiently clear
that a reasonable official would understand that what he is

doing violates that right. This is not to say that an official action in question is protected by qualified immunity unless the very action has previously been held unlawful." Indeed, the case against Gately does not depend simply on this argument. The very statutory provision on which it relies provides that the revocation must be in writing and further that the subject of the revocation has a right of appeal, and that the obligation to turn over the firearms is suspended during the pendency of such an appeal. See G. L. c. 140, § 129B (written notice and right to an appeal); § 129D (delivery or surrender of weapons upon revocation "unless an appeal is pending"). There was no written notice here which would have triggered Pasqualone's right of appeal. Harrington, the firearms officer, simply stated to Gately that the license was revoked "now." This lack of regularity cannot somehow create an immediate obligation to surrender the firearms that might not have existed had the proper procedures been followed. And as to qualified immunity on this score, there could not have been a reasonable belief that the action was taken lawfully because it contradicts the explicit statutory scheme.

Although we have no doubt that Gately violated Pasqualone's clearly established constitutional rights, we must acknowledge that this case exposes a gap in our law. Though there was no emergency here of the sort that the law describes by the term "exigent circumstances," it was clearly desirable that this veritable arsenal be removed from those particular premises, and reasonably promptly. Perhaps Pasqualone would have complied readily and voluntarily with a simple request that he turn over the weapons, particularly given the position of Kozak, who was responsible for many of the Bridge House parolees. But the statutory scheme appears to offer no way to compel such compliance, where the holder of a license appeals, G. L. c. 140, §§ 129B, 129D, and 131, and Gately is charged with knowledge of that scheme. If Gately had applied for a warrant to seize these weapons, it is not clear what legal authority a judicial officer would have had to issue one. Perhaps there might be common law authority for the issuance of a warrant in these circumstances. We call the attention of the Legislature to this gap in the law.

The judgment of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*