COMMONWEALTH *vs.* ERIC W. NEILSON.

Worcester. March 6, 1996. - June 25, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Search and Seizure,* Student, Probable cause, Warrant, Plain view, Consent,
Exigent circumstances. *Constitutional Law,* Search and seizure. *Probable
Cause.*

Discussion of cases considering the protections afforded elementary and
secondary public school students by the Fourth Amendment to the
United States Constitution and considering protections afforded college
students with respect to their dormitory rooms. [77-79]
Police officers who, for the purpose of confiscating contraband to be used in
a criminal proceeding, entered and searched a State college student's
dormitory room without the student's consent, without a warrant and in
circumstances that were not exigent violated the student's rights under
the Fourth Amendment to the United States Constitution: the
marihuana plants and other apparatus seized by the officers were cor-
rectly ordered suppressed. [79-80]

COMPLAINT received and sworn to in the Fitchburg Divi-
sion of the District Court Department on July 14, 1993.

On transfer to the jury session of that division, a pretrial
motion to suppress evidence was heard by *Dennis J. Brennan,*
J.

An application for leave to prosecute an interlocutory ap-
peal was allowed by *Nolan,* J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him
to the Appeals Court. The Supreme Judicial Court on its own
initiative transferred the matter from the Appeals Court.

*Matthew J. Mullaney,* Assistant District Attorney, for the
Commonwealth.

*Michael P. McEvilly* for the defendant.

LYNCH, J. The defendant, Eric W. Neilson, is charged with
illegal possession of marihuana and cultivating and distribut-
ing marihuana, in violation of G. L. c. 94C, §§ 32C, 34 (1994
ed.). A District Court judge allowed the defendant's motion

to suppress evidence and contraband obtained in a search of his dormitory room at Fitchburg State College. A single justice of this court granted the Commonwealth's application for an interlocutory appeal from the allowance of the defendant's motion and transmitted the case to the Appeals Court. We transferred the case here on our own initiative and now affirm the decision of the District Court.

1. *Facts.* The motion judge did not recite detailed findings, but there is no dispute as to the following facts. At the time of his arrest, the defendant was a twenty-three year old student living in a dormitory at Fitchburg State College, a public institution. Before moving into the dormitory, the defendant signed a residence hall contract, which stated, in relevant part, that "[r]esidence life staff members will enter student rooms to inspect for hazards to health or personal safety."[1]

On the morning of April 30, 1993, a maintenance worker heard a cat inside a dormitory suite containing four bedrooms, including the defendant's. He reported the information to college officials, who visited the suite and informed one of the residents (not the defendant) that any cat must be removed pursuant to the college's health and safety regulations. That afternoon, a college official posted notices on all four bedroom doors of the suite, informing the students of the possible violation of college policy and alerting them that a "door to door check" would be conducted by 10 P.M. that night to ensure that the cat had been removed.

That night, the officials returned; the defendant was not present. While searching the defendant's bedroom, the officials noticed a light emanating from the closet. The officials, fearing a fire hazard, opened the closet door. There, they discovered two four-foot tall marihuana plants, along with lights, fertilizer, and numerous other materials for marihuana cultivation and use.

The officials stopped their investigation at that point, and requested the assistance of the Fitchburg State College campus police, who have powers of arrest. G. L. c. 22C, § 63 (1994 ed.). The police arrived at the suite, entered the bedroom, and observed the marihuana plants and other appa-

---

[1] Although the record does not contain a signed copy of the residence contract, the parties do not dispute this fact.

ratus. They took photographs of the evidence and then, with the help of the college officials, removed it from the room. At no time did the police seek, obtain, or possess a warrant for the search.

2. *Discussion.* The District Court judge ruled that the warrantless search of the dormitory room by the campus police violated the defendant's constitutional rights and that all evidence obtained as a result of the search should be suppressed. We affirm that conclusion for the reasons set forth below.

The right[2] to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution applies when the police search a dormitory room in a public college. See *Morale* v. *Grigel,* 422 F. Supp. 988, 997 (D.N.H. 1976) ("dormitory room is a student's home away from home"); *Commonwealth* v. *McCloskey,* 217 Pa. Super. 432, 435 (1970) ("dormitory room is analogous to an apartment or a hotel room"). See also *Tinker* v. *Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 506 (1969) (students do not "shed their constitutional rights . . . at the schoolhouse gate"). To be reasonable in the constitutional sense, a search usually must be supported by probable cause and be accompanied by a search warrant, unless there are circumstances excusing the use of a warrant. See *Pasqualone* v. *Gately,* 422 Mass. 398, 401-402 (1996); *Commonwealth* v. *Viriyahiranpaiboon,* 412 Mass. 224, 226 (1992).[3]

The probable cause and warrant requirements are relaxed, however, in the case of searches that occur in elementary and secondary public schools. See *New Jersey* v. *T.L.O.,* 469 U.S. 325, 341-342 (1985); *Commonwealth* v. *Carey,* 407 Mass. 528, 533-534 (1990). There is no constitutional violation when a high school official conducts a warrantless search that is "reasonable in all the circumstances." *Id.* at 533. This reduced standard was prompted by "[c]oncerns about school officials'

---

[2]The defendant made no argument below that his rights under the Massachusetts Declaration of Rights were greater than those provided under the Constitution of the United States and therefore any such argument has been waived. *Commonwealth* v. *Carey,* 407 Mass. 528, 531 n.3 (1990).

[3]"Probable cause for Fourth Amendment purposes means that there is reason to believe that a crime has been committed and that evidence of the crime will be found in the place to be searched." *Commonwealth* v. *Snyder,* 413 Mass. 521, 527 n.4 (1992).

vital responsibility to preserve a proper educational environ-
ment" and " '[t]he special need for an immediate response to
behavior that threatens either the safety of schoolchildren and
teachers or the educational process itself . . . .' " *Id.*, quot-
ing *Coffman* v. *State*, 782 S.W.2d 249, 251 (Tex. Ct. App.
1989). See *New Jersey* v. *T.L.O.*, *supra* at 339-340. See gener-
ally *Camara* v. *Municipal Court of San Francisco*, 387 U.S.
523, 534-539 (1967) (setting out Fourth Amendment balanc-
ing test for administrative searches).

The Commonwealth urges us to extend the lesser protec-
tions afforded to high school students into the collegiate arena.
Although the courts that have examined the issue are split on
whether the Fourth Amendment requires probable cause and
a warrant in college searches,[4] when police are involved and
the evidence obtained is to be used in a criminal proceeding,
courts generally require probable cause and a warrant, absent
express consent or exigent circumstances. See *Piazzola* v.
*Watkins*, 442 F.2d 284, 289 (5th Cir. 1971); *People* v. *Cohen*,
57 Misc. 2d 366, 369 (N.Y. Dist. Ct. 1968); *Commonwealth*
v. *McCloskey*, *supra* at 434-436. Cf. *People* v. *Haskins*, 48
A.D.2d 480, 484 (N.Y. 1975) ("A more strict standard would
certainly apply if the search had been instigated by law
enforcement officials or if law enforcement personnel had
participated in the search to any significant degree, thereby
directly tainting the search by the school official with State
action"); *State* v. *Hunter*, 831 P.2d 1033, 1037 (Utah Ct.
App. 1992) ("Nor did university officials attempt to delegate
their right to inspect rooms to the police, which would result
in the circumvention of traditional restrictions on police activ-
ity"). See also *New Jersey* v. *T.L.O.*, *supra* at 341 n.7 (not
deciding whether probable cause and a warrant might be
required when police are involved in a high school search);
*Picha* v. *Wielgos*, 410 F. Supp. 1214, 1219-1221 (N.D. Ill.

---

[4]Compare *Keene* v. *Rodgers*, 316 F. Supp. 217 (D. Me. 1970); *Moore* v.
*Student Affairs Comm. of Troy State Univ.*, 284 F. Supp. 725 (M.D. Ala.
1968); *State* v. *Kappes*, 26 Ariz. App. 567 (1976); *People* v. *Kelly*, 195 Cal.
App. 2d 669 (1961); *State* v. *Hunter*, 831 P.2d 1033, 1037 (Utah Ct. App.
1992), with *Piazzola* v. *Watkins*, 442 F.2d 284, 289 (5th Cir. 1971); *Morale*
v. *Grigel*, 422 F. Supp. 988, 997 (D.N.H. 1976); *Smyth* v. *Lubbers*, 398 F.
Supp. 777, 785 (W.D. Mich. 1975); *People* v. *Cohen*, 57 Misc. 2d 366, 369
(N.Y. Dist. Ct. 1968); *Commonwealth* v. *McCloskey*, 217 Pa. Super. 432,
435-436 (1970).

1976) (junior high school search by police required probable cause).

The defendant does not contend (and the District Court judge did not find) that the initial search of the dormitory room by college officials was improper. The defendant consented to reasonable searches to enforce the college's health and safety regulations when he signed the residence contract. See *Boston Hous. Auth.* v. *Guirola*, 410 Mass. 820, 827-828 (1991). The hunt for the elusive feline fit within the scope of that consent. See *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 178-179 (1980). Similarly, when the college officials opened the closet door they were reasonably concerned about health and safety. Thus, the initial search was reasonable because it was intended to enforce a legitimate health and safety rule that related to the college's function as an educational institution.[5] See *Piazzola* v. *Watkins, supra* at 289 (search must further legitimate educational function); *Morale* v. *Grigel, supra* at 998 (same); *Smyth* v. *Lubbers*, 398 F. Supp. 777, 790 (W.D. Mich. 1975) (same). See generally Annot., 31 A.L.R.5th 229, 337-338 (1995).

Instead, the crux of the defendant's argument is that constitutional violation occurred when the campus police searched the room and seized evidence. We agree. The police entered the room without a warrant, consent, or exigent circumstances. This search was unreasonable and violated the defendant's Fourth Amendment rights. The Commonwealth contends that, since the college officials were in the room by consent, and observed the drugs in plain view while pursuing legitimate objectives, the police officers' warrantless entry was proper. Furthermore, the Commonwealth argues, the police action was lawful because it did not exceed the scope of the prior search and seizure by college officials. We disagree.

First, there was no consent to the police entry and search of the room. "The [defendant's] consent [was] given, not to police officials, but to the University and the latter cannot fragmentize, share or delegate it." *People* v. *Cohen, supra.* While the college officials were entitled to conduct a health and safety inspection, they "[c]learly . . . had no authority to consent to or join in a police search for evidence of crime." *Piazzola* v. *Watkins, supra* at 290.

---

[5]The college officials could have reported their observations to the police, who could have used the information to obtain a warrant.

Second, the plain view doctrine does not apply to the police seizure, where the officers were not lawfully present in the dormitory room when they made their plain view observations. *Commonwealth* v. *Lewin (No. 1)*, 407 Mass. 617, 627 (1990). Cf. *Commonwealth* v. *Franco*, 419 Mass. 635, 641 (1995); *Commonwealth* v. *Viriyahiranpaiboon, supra* at 227-228. While the college officials were legitimately present in the room to enforce a reasonable health and safety regulation, the sole purpose of the warrantless police entry into the dormitory room was to confiscate contraband to be used in a criminal proceeding. An entry for such a purpose required a warrant where, as here, there was no showing of express consent or exigent circumstances.[6]

We conclude that, when the campus police entered the defendant's dormitory room without a warrant, they violated the defendant's Fourth Amendment rights. All evidence obtained as a result of that illegal search was properly suppressed by the judge below.

*Judgment affirmed.*

---

[6]The cases cited by the Commonwealth to support its position involve searches initiated by private citizens and are therefore inapposite. See *United States* v. *Clutter*, 914 F.2d 775, 779 (6th Cir. 1990), cert. denied, 499 U.S. 947 (1991); *United States* v. *Roberts*, 644 F.2d 683, 688 (8th Cir.), cert. denied, 449 U.S. 821 (1980); *United States* v. *Bomengo*, 580 F.2d 173, 175-176 (5th Cir. 1978), cert. denied, 439 U.S. 1117 (1979). Here, the Commonwealth concedes that the full-time employees of Fitchburg State College who conducted the initial search were State actors.