COMMONWEALTH *vs.* KEITH J. CONSIDINE
(and two companion cases[1]).

Berkshire. December 4, 2006. - January 31, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Student, State action, Consent. *Constitutional Law,* Search and seizure, State action.

In a criminal case where controlled substances and alcohol were seized from the hotel room of three private high school students (defendants) on a school trip, the Superior Court judge erred in allowing motions to suppress evidence of the contraband and one defendant's associated admissions, where the school officials and the hotel's head of security involved in the search were not State actors bound by the constitutional prohibition against unreasonable searches and seizures [297-301], and where evidence — including statements made by one of the defendants — obtained by a State trooper responding to a call from the hotel's head of security was admissible, given that the trooper entered the defendant's hotel room pursuant to consent conferred by the school authorities [301-302]. IRELAND, J., concurring.

COMPLAINTS received and sworn to in the Northern Berkshire Division of the District Court Department on June 13, 2003.

Pretrial motions to suppress evidence were heard by *Michael Ripps,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Greaney,* J., and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Judith C. Knight* for Keith Considine & another.

*Mark G. Miliotis* for Caleb Tripp.

*Tim R. Hwang,* pro se, amicus curiae, submitted a brief.

COWIN, J. We consider in this case whether private school officials are agents of the State and thus bound by the constitu-

---

[1]Commonwealth *vs.* Caleb J. Tripp and Commonwealth *vs.* Jeffrey A. Rogers.

tional prohibition against unreasonable searches and seizures. The question arises in the context of motions to suppress. The three defendants — Keith Considine, Caleb Tripp, and Jeffrey Rogers — were charged in the Northern Berkshire Division of the District Court Department with one count each of possession of a class B substance, possession of a class D substance, and being a minor in possession of alcohol. Each filed a motion to suppress evidence found in the hotel room in which they were staying during a high school ski trip. Defendant Tripp also filed a motion to suppress statements he made to police and school employees at that time. A judge in the District Court allowed the motions. The Commonwealth's application for interlocutory appeal was allowed, and the case proceeded to the Appeals Court. We subsequently transferred the case here on our own motion. We reverse the order[2] allowing the motions to suppress.[3]

*Facts.* The following summary is taken from the judge's findings of fact. At the relevant time, the three defendants were all students at Bishop Stang High School (school), which is operated by the Roman Catholic Diocese of Fall River. On March 7, 2003, they were among a group of approximately thirty students and nine staff members on a school-sponsored ski trip to Jiminy Peak Resort (hotel) in the town of Hancock. Four students stayed in each room; their parents paid for the rooms. The students were aware that they were subject to certain rules, such as surrendering their keys to a chaperone each morning and not being in their room during the day without a chaperone. The school handbook granted school personnel the right to inspect "any locker at any time if the administration believes that the content of any locker is not in the best interests of the school." The handbook further provided: "Any tobacco, drugs, alcohol, or other illegal substances will be confiscated and dealt with appropriately." In addition, the handbook stated that "[a]ll school rules apply on all field trips."

On March 8, one of the chaperones on the trip learned that some students had been to their room unsupervised, and decided

---

[2]The District Court judge wrote one decision resolving the motions to suppress of all three defendants.

[3]We acknowledge the amicus brief filed by Tim R. Hwang.

to check on them. She and another chaperone retrieved the room key and proceeded to the room.[4] The three defendants and the younger brother of Tripp were in the room at various points and were reluctant to leave. Once the boys finally agreed to "go out skiing," everyone left the room.

The chaperones decided to "check" the boys' room and used the key to open the door. They and the school principal searched the room thoroughly, opened containers and bags, and found "numerous items of contraband," including alcohol and lighters. Two clay pipes were found in a search of trash that had been removed from the room. The boys were summoned,[5] and when they were ordered to empty their pockets, Tripp "handed over" marijuana and a clay pipe, and Rogers "handed over" a small container of marijuana. Hotel security was notified and the head of security (who was also a part-time police officer for the nearby town of Cheshire) responded and ordered the boys to put their belongings in a pile. Each made admissions, with Tripp admitting possession of the cocaine. The hotel security officer called the State police.[6]

Trooper Stephen Jones arrived, advised Tripp of his rights,[7] and had just begun a conversation with Tripp when attorney Considine, defendant Keith Considine's father, called and instructed "them" not to talk. All questioning then ceased.[8]

*Discussion.* The defendants argue that the search of their room by school officials is prohibited by the Fourth Amendment to the United States Constitution[9] and art. 14 of the Mas-

---

[4]The other chaperone had previously taken the key to the room from the boys.

[5]The judge's findings do not indicate which boys were summoned.

[6]The judge's findings state that "[t]he school" notified hotel security. The only testimony is that the school principal telephoned the State police requesting assistance. The difference is not relevant to our decision.

[7]The defendants were not younger than seventeen; therefore, the presence of an "interested adult" was not required. See *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 855 n.12 (2000); *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 134 (1983).

[8]Although the judge's findings do not indicate that any admissions were made to the State trooper, in his discussion section, the judge states that "[o]ral statements were made to Trooper Jones." There is no further indication of what those statements were, and the content of the statements is of no significance.

[9]The Fourth Amendment to the United States Constitution states, in pertinent

sachusetts Declaration of Rights,[10] and that, therefore, reasonable suspicion is required to support the search. The judge agreed. The reasoning for this approach is based on the United States Supreme Court's decision in *New Jersey* v. *T.L.O.*, 469 U.S. 325, 336-337 (1985), which held that public school officials searching students' persons and effects act in a public capacity, as agents of the State, and are therefore subject to the Fourth Amendment's exclusionary rule. But, because of their unique position of responsibility to their students and to the public, these officials need act only reasonably in the circumstances — that is, they must have reasonable suspicion, rather than probable cause, to support a search. *Id.* at 341-342. See *Commonwealth* v. *Damian D.*, 434 Mass. 725, 728 (2001) (applying reasonable suspicion standard to search by public school officials). See also *Commonwealth* v. *Buccella*, 434 Mass. 473, 485-487 (2001), cert. denied, 534 U.S. 1079 (2002).

The judge concluded that there is no logical reason for the rights of public school students to differ from those of private school students, stating that "both attend the school of their choosing under the same [S]tate mandates that require that they go to school until age [sixteen]." Accordingly, he determined that the "reasonable suspicion" standard of *New Jersey* v. *T.L.O.*, *supra*, applies both to public and to private school searches and that that standard had not been met here. The judge also determined that the statements made to the hotel security official and to the State trooper were "uninterrupted fruit of the poisonous tree." See *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963). Accordingly, he suppressed the physical evidence and the statements.

"The Fourth Amendment applies to searches by school officials in public schools," *Commonwealth* v. *Buccella*, *supra* at 485, because public school officials are agents of the State. *New Jersey* v. *T.L.O.*, *supra* at 336. Fourth Amendment protection does not apply to searches conducted by persons who are not

part: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ."

[10]Article 14 of the Massachusetts Declaration of Rights states in pertinent part: "Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

State agents. See *Commonwealth* v. *Robinson*, 399 Mass. 209, 215 (1987), quoting *Commonwealth* v. *Leone*, 386 Mass. 329, 333 (1982) ("Evidence discovered and seized by private parties is admissible without regard to the methods used unless State officials have instigated or participated in the search"). See also *Commonwealth* v. *Richmond*, 379 Mass. 557, 561-562 (1980) (no State action where mother of child gave police letter addressed to her daughter by defendant, who was "prime suspect" in murder investigation).

The question thus is whether the present search of the students' hotel room is a search conducted by agents of the State. The judge never actually characterized what occurred as State action. He referred to the actions of public school officials as constituting State action, which, of course, they are. He then stopped his analysis, and concluded merely that consistency requires that private school students be treated the same as public school students. He believed that private and public school students are similarly situated for this purpose, and what constitutes an unlawful search of the premises of a public school student should constitute an unlawful search of the premises of a private school student as well. We disagree for the reasons expressed in *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 837-843 (1982). We conclude also that the search in the present case was not unlawful under art. 14 of the Declaration of Rights.

In the *Rendell-Baker* case, the United States Supreme Court considered a challenge under 42 U.S.C. § 1983 (1976 & Supp. III 1979), lodged by certain discharged employees of a private secondary school specializing in the education of "students who have experienced difficulty completing public high schools," including "many [who] have drug, alcohol, or behavioral problems, or other special needs." *Id.* at 832. Students were referred to the school by public agencies and the school received nearly all of its funding from public sources. *Id.* It was subject to considerable public regulation. *Id.* at 833.

Because the school was a private school, the court determined that the employees had not stated a claim under § 1983. *Id.* at 840-841, 843. "[T]he Fourteenth Amendment, which prohibits the [S]tates from denying [F]ederal constitutional rights and which guarantees due process, applies to acts of the [S]tates,

not to acts of private persons or entities." *Id.* at 837. Absent State action, the Fourteenth Amendment, as well as the implementing provisions of § 1983, are inapplicable. The private character of the school was not altered by its engagement in public contracts, its fiscal relationship with the State, the extensive regulation to which it was subject, or the performance of a public function. *Id.* at 840-843.

This analysis controls the present dispute. Because, as a private entity, the school's activities cannot be "fairly attributable to the State," *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), there is no State action to serve as a predicate for application of either the Fourth Amendment or art. 14. For purposes of State action analysis, there is no distinction between the private school that discharges an employee and the private school that searches a student's hotel room. In each instance, it is the private character of the actor that prevents its actions as "fairly be[ing] seen as [S]tate action," *Rendell-Baker, supra* at 838; here, that requires a determination that the constitutional prohibition against unreasonable searches and seizures *by the State* does not apply. That the impact on a private school student differs from the impact on a public school student is a product not of unfairness but of the scope of the constitutional guarantees.[11,12]

Our reasoning for determining that the school officials are

----

[11]Various provisions in the school handbook referencing and incorporating Federal and State statutes do not render the school officials State actors. See *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 837-843 (1982).

[12]The motion judge found support in a case from the Supreme Court of New York, Appellate Division, Third Department, *People* v. *Haskins*, 48 A.D.2d 480, 483 (N.Y. 1975). In that case, the New York court concluded that the defendant, a student at a private college, had no reasonable expectation of privacy in an unoccupied room of a student dormitory where drugs were located. The court specifically stated that it was unnecessary to decide whether the college was a governmental agency, but stated in dictum that it would be "unjust" to suppress evidence seized in a public school and not suppress evidence seized in an identical search in a private school. *Id.* The motion judge in the present case adopted this reasoning and noted that we had cited the New York case in *Commonwealth* v. *Neilson*, 423 Mass. 75, 78 (1996). Obviously, we are not bound by decisions of other States, although we often refer to them when their reasoning is persuasive. Here, however, the statement is dictum which failed to recognize the distinction between State action and private searches. We cited the New York case only as authority in another context. In addition, the Fourth Department of the Appellate Division of the

not State agents applies as well to the head of security for the hotel. Acting in a private capacity, he responded to a call from school officials, entering the room at their request. The school officials were in control of the room (the students were required to surrender their keys to a chaperone each morning and could not be in their room without a chaperone); thus, the officials could authorize the head of security's entry. See *Commonwealth v. Maloney*, 399 Mass. 785, 787-788 (1987). The fact that the head of security was also a part-time Cheshire police officer is irrelevant; he was not acting in that capacity at the time of this incident, and, in any case, he was outside his jurisdiction.

By contrast, the actions of Trooper Jones are, of course, those of a State actor. However, he entered the room pursuant to consent conferred by the school authorities. See *id.* As stated, the school officials were in control of the room, and the finding that "[t]he school notified hotel security" plainly indicates consent by the school officials for hotel security to take whatever action was appropriate in the circumstances, including calling in the police. Accordingly, the State trooper was present by consent, and any search for or seizure of contraband by him was permissible.[13,14]

Tripp contends that his statements to the head of security and to Trooper Jones are inadmissible as the fruit of the poisonous tree, i.e., because of the prior illegalities. See *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963). Because we have concluded that there was no prior illegal action, the statements are not inadmissible for that reason. In addition, because the head of security was not a State actor, the limitations of the

same New York court criticized this language in the *Haskins* case, stating that it found "no authority to support the dicta [*sic*] . . . that would depart from the established rule that neither the Fourth nor Fourteenth Amendments proscribe private as opposed to governmental activity in the area of searches made" during criminal investigations. *People* v. *Boettner*, 50 A.D.2d 1074, 1074 (N.Y. 1975).

[13]As noted earlier, see note 6, *supra*, despite the judge's finding that the school notified hotel security, the only testimony was that the school principal telephoned the State police. The difference does not affect our conclusion. In either event, the trooper was in the room at the request, directly or indirectly, of the school authorities.

[14]*Commonwealth* v. *Neilson, supra*, cited by the defendants, is inapposite. That case concerned a search of a dormitory room at a public college.

Fifth Amendment to the United States Constitution[15] are not applicable to him, and any statements he obtained from Tripp need not be suppressed. Likewise, Tripp's statements to Trooper Jones were not fruit of a poisonous tree, see *id.*, and should not have been suppressed on that ground.

The order allowing the motions to suppress is reversed. The cases are remanded to the District Court for further proceedings in accordance with this opinion.

*So ordered.*

IRELAND, J. (concurring). I concur in the result in this case as I must, but feel compelled to write separately to voice a concern about fairness. I agree with the motion judge's conclusion that there is no logical reason for the rights of public and private school students to differ where they are subject to searches by school officials. Allowing private school officials to search students based on hunches or whims that may be rooted solely in personal prejudices potentially could lead to abuses where students are targeted unfairly and suffer serious legal consequences as a result. To protect against potential abuses, it seems to me that private schools may want to give thought to developing policies that set a standard for searches, such as the legal standard of reasonable suspicion as explained in *New Jersey* v. *T.L.O.*, 469 U.S. 325 (1985).

My concerns aside, however, as the court correctly points out, it is the scope of constitutional guarantees as currently defined that leads to the conclusion that private school officials are not State actors. See *Rendell-Baker* v. *Kohn*, 457 U.S. 830, 843 (1982). Therefore, they may conduct searches of their students for no articulable reason, as was the case here. See

---

[15]The Fifth Amendment to the United States Constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

*Bally* v. *Northeastern Univ.*, 403 Mass. 713, 717 n.3 (1989) (where private institution and no showing of State action, legal analysis of student athlete drug testing "emphatically differ[s]").

The *Rendell-Baker* case did not deal with the search of students by private school officials. But most important for the purposes of this case is that, in circumstances more compelling than those here (i.e., the school was providing a service in lieu of the State providing it), the United States Supreme Court in the *Rendell-Baker* case rejected the view that there was a close enough connection between the State and the school to impute the actions of school officials to the State. See *Rendell-Baker* v. *Kohn*, *supra* at 844-852 (Marshall, J., dissenting).

Accordingly, I concur.